## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **KEVIN WEBB, individually and as the** | § | |
| **representative of the Estate of Robert Allen** | § | |
| **Webb, and EDNA WEBB, and CASEY AKINS,** | § | |
| **individually as heirs at law** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | Civil Action No. 6:13-cv-711 |
| | § | |
| **BRAD LIVINGSTON, RICK THALER,** | § | |
| **WILLIAM STEPHENS, ROBERT EASON,** | § | |
| **and TOMMIE HAYNES, in their individual** | § | |
| **capacities, the TEXAS DEPARTMENT OF** | § | |
| **CRIMINAL JUSTICE, and THE UNIVERSITY** | § | |
| **OF TEXAS MEDICAL BRANCH.** | § | |
| *Defendants.* | § | |

---

## DEFENDANT TEXAS DEPARTMENT OF CRIMINAL JUSTICE'S RESPONSE TO PLAINTIFF KEVIN WEBB'S FIRST SET OF REQUESTS FOR PRODUCTION AND INTERROGATORIES

**TO:**   Jeff Edwards and Scott Medlock, The Edwards Law Firm, The Haehnel Building, 1101 East 11th Street Austin, TX AND, Brian McGiverin, Texas Civil Rights Project, 1405 Montopolis Drive, Austin, TX 78741.

COMES NOW the Defendant, Texas Department of Criminal Justice, by and through counsel, the Texas Attorney General's Office, and offers the following **Defendant Texas Department of Criminal Justice's Response to Plaintiff Kevin Webb's First Set of Requests for Production and Interrogatories** served September 30, 2013.

Respectfully submitted,

**GREG ABBOTT**
Attorney General of Texas

**DANIEL T. HODGE**
First Assistant Attorney General

**DAVID C. MATTAX**
Deputy Attorney General for Defense Litigation

~~KAREN D. MATLOCK~~
Chief, Law Enforcement Defense Division

**BRUCE R. GARCIA**
Assistant Attorney General
Attorney-in-charge
State Bar No. 07631060
Attorney-in-charge

**PATRICK BREZIK**
Assistant Attorney General
State Bar No. 24040573
P. O. Box 12548, Capitol Station
Austin, Texas  78711
(512) 463-2080 / Fax No. (512) 495-9139

**MATTHEW J. GREER**
Assistant Attorney General
State Bar No. 24069825
Southern No: 1171775
P. O. Box 12548, Capitol Station
Austin, Texas  78711
(512) 463-2080/Fax No. (512) 495-9139

**Attorneys for Defendants Eason, Haynes and TDCJ**

## CERTIFICATE OF SERVICE

I, **BRUCE R. GARCIA**, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing **Defendant Texas Department of Criminal Justice's Response to Plaintiff Kevin Webb's First Set of Requests for Production and Interrogatories** has been served on all counsel of record on December 2, 2013, as follows:

| | |
|---|---|
| Jeff Edwards, <br> Scott Medlock <br> The Edwards Law Firm <br> The Haehnel Building <br> 1101 East 11th Street <br> Austin, TX | *Via US Mail* |
| Brian McGiverin <br> Texas Civil Rights Project <br> 1405 Montopolis Drive <br> Austin, TX 78741 | *Via US Mail* |
| Kim Coogan <br> Shanna Elizabeth Molinare <br> Assistant Attorney General <br> P.O. Box 12548, Capitol Station <br> Austin, Texas 78711 | *Via Interagency Mail* |
| Demetri Anastasiadis <br> Assistant Attorney General <br> P.O. Box 12548, Capitol Station <br> Austin, Texas 78711 | *Via Interagency Mail* |

**BRUCE R. GARCIA**
Assistant Attorney General

## FIRST SET OF INTERROGATORIES

Defendant Texas Department of Criminal Justice's Response to Plaintiff Kevin Webb's First Set of Requests for Production and Interrogatories served September 30, 2013.

1.    Identify all steps you took to protect Robert Webb from heat index temperatures in the Hodge Unit in excess of 90 degrees.

**RESPONSE: The Agency has mandatory heat precaution training for all staff and offenders each year in April. Each shift supervisor is instructed to discuss heat awareness and warning signs at shift turnouts during the summer months. Heat awareness, warning signs, and hydration memos were placed throughout the facility for staff and offenders. Shower temperatures were lowered and shower times were extended. Water coolers with ice were placed in the dorms during summer months. Staff was instructed that offenders identified as needing or that requested relief from the heat were allowed to sit in cooler areas. Work shifts are reduced or cancelled and offenders are allowed to wear less clothing in the housing areas. The procedures are reviewed continually by TDCJ staff.**

**Further, the TDCJ Risk Management Office takes the following steps: On a unit level, risk managers monitor compliance with AD-10.64 including monitoring daily outdoor temperature readings, coordinating with unit medical personnel to conduct heat-related training each spring, documents training as required by policy. The unit risk manager also provides "Heat/Cold Weather Cards" to officers and unit staff and investigates injuries and illnesses suffered by staff or offenders, including those associated with temperature extremes or weather. Agency-wide, Risk Management monitors compliance with AD-10.64 through an operational review process which is outlined in ED-02.92 *Operational Review Program*. Unit reviews are conducted twice each year, regional reviews are conducted annually, and division level reviews are conducted every three years using checklists published in the Unit Operational Review Manual. Risk Management also posts heat precaution messages for offenders in the ECHO newspaper, including messages in Issues 4, 5, and 6 of Volume 84 and messages in Issues 3 and 6 of Volume 85. Finally, the Risk Management Office prepares training circulars regarding hot weather precautions.**

**See also heat safety training and circulars produced in response to Plaintiff Stephen McCollum's First Request for Production to TDCJ, numbers 3-5 in *McCollum v. Livingston*, 3:12-cv-02037, U.S. District Court-Northern District- Dallas.**

2.    Identify all heat-related deaths (including, but not limited to, fatalities where the cause of death is listed as "hyperthermia") of inmates in Texas Department of Criminal Justice facilities between January 1, 1990 to the present.

**RESPONSE: Objection. See documents previously produced to plaintiffs' counsel pursuant to discovery requests in *McCollum v. Livingston*, 3:13-cv-02037, USDC-ND Dallas.**

3.   Identify all heat-related injuries (refer to definition paragraph R) to inmates in Texas Department of Criminal Justice facilities between January 1, 1990 to the present.

**RESPONSE: Objection. See documents previously produced to plaintiffs' counsel pursuant to discovery requests in *McCollum v. Livingston*, 3:13-cv-02037, USDC-ND Dallas.**

4.   Identify all heat-related injuries to inmates in the Hodge Unit between January 1, 2002 to the present.

**RESPONSE: Objection.   See documents previously produced to plaintiffs' counsel pursuant to discovery requests in *McCollum v. Livingston*, 3:13-cv-02037, USDC-ND Dallas. See also attached documents.**

5.   Identify all heat-related injuries to employees of the Texas Department of Criminal Justice working in Texas Department of Criminal Justice facilities between January 1, 2002 to the present, including, but not limited to, injuries where employees filed workers compensation claims.

**RESPONSE: Objection.   See documents previously produced to plaintiffs' counsel pursuant to discovery requests in *McCollum v. Livingston*, 3:13-cv-02037, USDC-ND Dallas.**

6.   Identify all heat-related injuries to employees of the Texas Department of Criminal Justice in the Hodge Unit between January 1, 2002 to the present, including, but not limited to, injuries where employees filed workers compensation claims.

**RESPONSE: Objection.   See documents previously produced to plaintiffs' counsel pursuant to discovery requests in *McCollum v. Livingston*, 3:13-cv-02037, USDC-ND Dallas.**

7.   Describe in detail why all inmate housing areas at the Hodge Unit are not air conditioned, identifying all people responsible for decisions not to air condition any part of the Hodge Unit.

**RESPONSE: Defendant objects as the term "air conditioned" is not defined. Subject to and without waiving the foregoing objection, the Hodge Unit was built and opened in 1995.**

8.   Identify all persons who authorized Robert Webb's placement in each housing area he spent time in during his 2011 incarceration at the Hodge Unit and describe in detail the basis for each placement. A response to this interrogatory should identify each location Robert Webb was housed, including building, bunk number, and whether he was assigned to an upper or lower bunk.

**RESPONSE: Offender Webb was housed in J1 Building, C Wing, 2 Row and assigned to the top bunk. Offender Webb was moved to that housing assignment, J1C219T, on March 25, 2010 on the authority of Assistant Warden Priscilla Daly. Offender Webb's housing assignment was not changed in 2011**

9.  Identify all persons who you believe have knowledge of relevant facts and identify the issues upon which you believe they have knowledge. A response to this interrogatory should include, but is not limited to, all prisoners housed in the inmate housing area with Robert Webb.

**RESPONSE: The individuals that will likely to have information regarding this case are either named as defendants in this case or have been previously identified in documents released through the discovery process in this case. Investigation continues; Defendant will supplement this response.**

10. If you contend that some other person or legal entity is, in whole or in part, liable to Plaintiff in this matter, identify that person or legal entity and describe in detail the basis of said liability.

**RESPONSE: Defendant objects as this interrogatory calls for a legal conclusion. Defendant further objects that this interrogatory invades the attorney work product and the attorney client privileges.**

11. Please describe in detail all steps that you have taken to bring the Hodge Unit into compliance with the Americans with Disabilities Act and the Rehabilitation Act. Please include information about what modifications (if any) have been made at the prison, whether a transition plan and self-evaluation have been completed (as those terms are used in the ADA), and what services and programs at the jail exist to accommodate inmates' disabilities.

**RESPONSE: Defendant objects to the usage of the phrase "bring the Hodge Unit _into_ compliance" (emphasis added) as assuming facts not in evidence and argumentative. Subject to and without waiving the foregoing objection, please see the ADA Findings of the Hodge Unit Risk manager included in response to plaintiffs' first requests for production under the business records affidavit of Eric Henslee.**

12. Please identify each person who provided information or assisted in any way in answering these interrogatories, and as to each such person, please indicate the discovery request with respect to which he or she was involved.

**RESPONSE: Defendant objects to the extent that this interrogatory is invasive of the attorney client privilege and attorney work product. Subject to and without waiving the foregoing objection, the individuals signing verifications for these interrogatories assisted in answering the interrogatories identified in their respective verifications.**

13.     Please identify all persons employed at the Hodge Unit whose duties included spending time in the inmate housing areas during the summer of 2011, including, but not limited to, sworn law enforcement officers and non-sworn employees.

**RESPONSE: Defendant objects to the extent that this interrogatory is overly broad and the phrase "spending time in" is not defined.  Subject to and without waiving the foregoing objection, see shift rosters produced under the business records affidavit of Eric Henslee in response to Plaintiffs' first requests for production.**

14.     Please identify who was responsible for construction of the Hodge Unit, including, but not limited to, the construction firm and any architects involved in the design of the Hodge Unit. A response to this interrogatory should include information about the design of any ventilation system at the Hodge Unit.

**RESPONSE:  The architect/engineer responsible for the Hodge Unit was Goodwin, Alexander & Linville.  The contractor was Clearwater Constructors, Inc.**

15.     Please describe any policies at the Hodge Unit regarding prisoners' possession and use of personal fans in 2011.

**RESPONSE: Please see documents produced by the Hodge Unit under the business records affidavit of Eric Henslee.  The Hodge Unit followed the policy outlined in Message ID 246452TT on 5/7/10 on behalf of William Stephens, Deputy Director. An email was sent out stating that offender fans should not be confiscated due to property restriction during said time.    It went on to state that fans were allowed to all custody levels (to include administrative segregation and disciplinary status) and that offenders with fans stored based on theses restrictions would have their fans re-issued for the time period specified in the posting.   It also stated that all offenders were to be permitted to purchase a fan if they did not have one and gave instructions to ensure the fan program was in place allowing the permanent issue of a fan to an offender who had been indigent for the previous six months, on a first come first serve basis.  Offenders who had significant medical needs, based on a condition or medication that is negatively impacted, were given priority.**

**In August 2011, there was not a specific rule for offenders assigned to the Hodge unit regarding the possession or use of fans.  All offenders were allowed to possess a fan and use it any time of the day. All offenders who could not purchase a fan from commissary were provided with two options of obtaining a fan.  The first option was a loaner fan program and the second option was to obtain a fan through the Texas Cure indigent prisoner fan program.**

16.     Please describe in detail any "heat conditions" or "heat restrictions" assigned to prisoners at the Hodge Unit, including, but not limited to, why prisoners are assigned these conditions and what action (if any) TDCJ took in 2011 and 2012 when a prisoner is assigned "heat conditions" or "heat restrictions."

**RESPONSE: Defendant objects that this request is overly broad, not reasonably limited in scope or time, and not calculated to lead the discovery of admissible evidence. Defendant further objects that this request seeks confidential information about individuals who are not party to this suit and have not consented to the release of their private medical information.**

**Subject to and without waiving the foregoing objections, the following steps are taken when an offender is assigned heat restrictions on the Hodge Unit: 1) The Medical Department updates the offender's health summary with the heat restriction. A notification is sent to classification advising of the added restriction. 2) Upon receipt of the notification of the heat restriction, the offender's housing and job is reviewed. Any change to an offender's housing or job assignment that needs to be made will be done as quickly as possible. All offenders with heat restrictions will have their names added to a master list that is provided to security each week for the purpose of doing wellness checks and to keep them aware of which offenders have these restrictions.**

17.  Please describe in detail all TDCJ policies about what personal property prisoners at the Hodge Unit were allowed to possess in July and August 2011. A response to this interrogatory should include what items newly-arrived prisoners at the Hodge Unit were ~~issued on arrival, what items can be purchased from the prison commissary, and when~~ newly-arrived prisoners can purchase items from the commissary.

**RESPONSE: An offender newly assigned to the Hodge Unit would receive the following items: 1 shirt, 1 pair of pants, 2 pairs of socks, 2 pairs of boxer shorts, 1 towel, 2 sheets, 1 mattress, and a small bag of necessity items including a comb, razor, toothbrush, bar of soap, and toothpaste/tooth powder. In cold weather months, an offender would also receive a jacket and a blanket. The Hodge Unit does not have unit specific property policy but rather follows AD 03.72 regarding Offender Property. Hodge offenders can purchase any item currently in stock in the commissary provided that they do not go over the spending limit. Offenders can purchase items from the commissary on the days that the housing building to which they are assigned is scheduled to go to commissary. However, an offender who wishes to purchase fan can purchase one anytime the commissary is open and does not have to wait for his building's assigned day(s).**

18.  Please identify all persons that Defendant expects to call to testify on Defendant's behalf at trial.

**RESPONSE: Defendant objects to this interrogatory as premature at this juncture. Defendant will designate its witnesses in a timely fashion in accordance with the Court's scheduling order and the Federal Rules of civil procedure.**

19.  Please provide a complete and detailed list of all areas in the Hodge Unit that are air conditioned – including but not limited to dorms, inmate housing areas, inmate work areas, staff work areas, chow halls, libraries, gyms, etc.

**RESPONSE: Defendant objects as the term "air conditioned" is not defined. Subject to and without waiving the foregoing objection, the following areas of the Hodge Unit are serviced with air conditioners chilling air through either blowing heat off of a condenser coil or using a cooling tower: A-Control Building; P-Building which includes administrative offices, medical, education, law library, and the library; Vocational Classroom Offices; Maintenance Office; Laundry-Necessities Office: Back-Gate Office; Commissary; Offender Barbershop; Food Service Office; Security and Chaplain Offices in the Gym; the Chapel; J Building Control Pickets; Supervisor's Office on K Wing J4 Building; Perimeter Pickets 4, 5, and 6; and the Armory.**

20.     Please provide a complete and detailed list of all areas in the Hodge Unit that are NOT air conditioned – including but not limited to dorms, inmate housing areas, inmate work areas, staff work areas, chow halls, storage facilities, libraries, gyms, etc.

**RESPONSE: Defendant objects as the term "air conditioned" is not defined. Subject to and without waiving the foregoing objection, any area of the Hodge Unit not identified in response to Interrogatory 19 is not air conditioned.**

21.     Please identify all TDCJ units that have some inmate living areas with air conditioning.

**RESPONSE: Defendant objects that the terms "air conditioning" and "inmate living areas" are not defined. Defendant further objects that this interrogatory is overly broad, not reasonably limited in scope or time, and not calculated to lead to the discovery of admissible evidence.**

**Subject to and without waiving the foregoing objection, The following Region II TDCJ Units have at least one offender living area that is serviced with air conditioners chilling air through either blowing heat off of a condenser coil or using a cooling tower: the Beto Unit, the Boyd Unit, the Cole Unit, the Gurney Unit, the Hutchins State Jail, the Johnson Unit, the Michael Unit, the Moore Unit, the Powledge Unit, the Skyview Unit, and the Telford Unit.**

22.     Please identify all prisoners in the Hodge Unit who have, at any time, been given "heat restrictions" (see Definition S), or otherwise had any prison activities limited due to medical conditions adversely effected by heat or high temperatures, since January 1, 2011, and the time frames in which the prisoners had those restrictions.

**RESPONSE: Defendant objects that this request is overly broad, not reasonably limited in scope or time, and not calculated to lead the discovery of admissible evidence. Defendant further objects that this request seeks confidential information about individuals who are not party to this suit and have not consented to the release of their private medical information.**

23.    For the TDCJ prisons where inmate housing areas are presently air conditioned, please provide the annual cost of air conditioning these facilities.

**RESPONSE: Defendant objects that the terms "air conditioned" and "inmate housing areas" are not defined.  Defendant further objects that this interrogatory is overly broad, not reasonably limited in scope or time, and not calculated to lead to the discovery of admissible evidence.**

**Subject to and without waiving the foregoing objection, defendant is unable to answer as records of electricity expenses are not categorized in such a manner as to quantify expenses for air conditioning versus expenses for other usage.**

24.    For any TDCJ prison facility where air conditioning was installed in the past 10 years, please state the name of the facility, the date air conditioning was installed in the inmate housing areas, and provide a detailed description of any costs associated with installing air conditioning at those facilities.

**RESPONSE: Defendant objects that the terms "air conditioning" and "inmate housing areas" are not defined.  Defendant further objects that this interrogatory is overly broad, not reasonably limited in scope or time, and not calculated to lead to the discovery of admissible evidence.   Defendant further objects that this interrogatory is vague and incapable of answer as worded.**

25.    Identify all inmates who died while in the custody of the Hodge Unit between January 1, 2006 to the present. A response to this interrogatory should include the inmate's name, date of birth, date of death, offense, sentence length, and cause of death. (This interrogatory calls for information about prisoners assigned to the Hodge Unit, whether or not the prisoner died within the Hodge Unit facility or in a medical facility after transfer from the Hodge Unit.)

**RESPONSE: Defendant objects that this request is overly broad, not reasonably limited in scope or time, and not calculated to lead the discovery of admissible evidence.  Defendant further objects that sentence length and offense are not relevant.  Subject to and without waiving the foregoing objection, please see the documents produced in response to Plaintiffs' Requests for Production under the business records affidavit of Eric Henslee.**

## REQUESTS FOR PRODUCTION

Defendant Texas Department of Criminal Justice's Response to Plaintiff Kevin Webb's First Set of Requests for Production and Interrogatories served September 30, 2013.

1.  Please produce all documents or other physical or tangible evidence related to, referred to, identified in, or that formed the basis of any answer to the previous interrogatories, identifying the specific interrogatory to which that document or evidence is related.

**RESPONSE: Please see all documents regarding heat training, internal TDCJ memoranda, and investigations produced in *McCullom v. Livingston et al.*, Civil Action No. 3:12-cv-02037, United States District Court, Northern District of Texas Dallas Division. This also includes the depositions of Robert Eason regarding measures taken by the TDCJ in regards to summer temperatures. In addition, defendant will make available at a mutually convenient time for these previously produced documents to be reviewed by plaintiffs. If needed, Defendants will then allow the documents to be copied at plaintiff's expense.**

2.  Please produce all documents, including, but not limited to internal email, inmate grievances, and correspondence from state officials, reviewed by Tommie Haynes, William Stephens, Robert Eason, Rick Thaler, or Brad Livingston prior to August 5, 2011 regarding heat and/or high temperatures in TDCJ facilities.

**RESPONSE: Please see all documents regarding heat training, internal TDCJ memoranda, and investigations produced in *McCullom v. Livingston et al.*, Civil Action No. 3:12-cv-02037, United States District Court, Northern District of Texas Dallas Division. This also includes the depositions of Robert Eason regarding measures taken by the TDCJ in regards to summer temperatures. In addition, defendant will make available at a mutually convenient time for these previously produced documents to be reviewed by plaintiffs. If needed, Defendants will then allow the documents to be copied at plaintiff's expense.**

3.  Please produce copies of all relevant policy documents governing procedures that were in place during 2011 at the Hodge Unit related to heat, temperature, or heat index. The request includes any rules or policies governing acceptable temperatures in TDCJ inmate housing areas during the summer months or other periods of high temperatures.

**RESPONSE: Please see all documents regarding heat training, internal TDCJ memoranda, and investigations produced in *McCullom v. Livingston et al.*, Civil Action No. 3:12-cv-02037, United States District Court, Northern District of Texas Dallas Division. This also includes the depositions of Robert Eason regarding measures taken by the TDCJ in regards to summer temperatures. In addition, defendant will make available at a mutually convenient time for these previously produced documents to be reviewed by plaintiffs. If needed, Defendants will then allow the documents to be copied at plaintiff's expense.**

4.  Please produce all documents that describe, or are used in, or are otherwise related to the training of officers at the Hodge Unit related to high temperatures at the prison prior to August 5, 2011.

**RESPONSE: Defendants will make these documents available for inspection to plaintiff at a mutually convenient time to be reviewed by plaintiffs. If needed, Defendants will then allow the documents to be copied at plaintiff's expense.**
**In addition, Please see all documents regarding heat training, internal TDCJ memoranda, and investigations produced in *McCullom v. Livingston et al.*, Civil Action No. 3:12-cv-02037, United States District Court, Northern District of Texas Dallas Division. This also includes the depositions of Robert Eason regarding measures taken by the TDCJ in regards to summer temperatures.**

5.  Please produce all work orders for the repair of ice machines, fans, ventilation, sinks, and showers for inmate housing areas at the Hodge Unit, including, but not limited to, AD84 forms, created from January 1, 2011 to the present.

**RESPONSE: Defendants will make these documents available for inspection to plaintiff at a mutually convenient time.**

6.  Please produce all current documents that describe, or are used in, or are otherwise related to the training of officers at the Hodge Unit related to high temperatures at the prison.

**RESPONSE: Objection overbroad under burden. See response to Request #4**

7.  Please produce all documents related to heat, high temperatures, or heat index related to any training Tommie Haynes, Rick Thaler, William Stephens, Robert Eason, and Owen Murray received from TDCJ prior to August 5, 2011.

**RESPONSE: Defendants have ordered responsive records, and if and if in existence will make these documents available at a mutually convenient time to be reviewed by plaintiffs.**

8.  Please produce all documents Tommie Haynes, Rick Thaler, William Stephens, Robert Eason, and Owen Murray reviewed at any time prior to July 23, 2011 showing any medical treatment any person (including inmates and TDCJ employees) received related to heat-related injuries sustained in TDCJ facilities.

**RESPONSE: Objection, overly broad and undue burden. Plaintiff seeks documents that contain "individually identifiable health information" as defined by the Health Insurance Portability and Accountability Act of 1996 or HIPAA. Defendants cannot release these documents without the permission of the named individuals. Subject to and without waiving said objections, defendants have ordered and will supplement with proper redactions as required by HIPAA. Defendants will make these documents available for inspection to plaintiff at a mutually convenient time.**

9.      Please produce all documents, including any diagrams or pictures, related to the structure and function of any ventilation system (including, but not limited to, the air handlers, and fans) at the Hodge Unit.

**RESPONSE: Objection, over broad and unduly burdensome and not limited in scope or time.  In addition, this document seeks information that if disclosed could lead to potential problems for unit, staff and offender security and safety.**

10.     Please produce a diagram of the Hodge Unit, identifying which portions (if any) of the facility are air conditioned, and any locations where Robert Webb was housed prior to their deaths.

**RESPONSE: Objection, this calls for the creation of a document. Subject to and without waiving, no such document exist.**

11.     Please produce a diagram of the inmate housing areas to which Robert Webb was assigned on the dates described in the complaint. The diagram must include notations of the length of all interior walls.

**RESPONSE: Objection, this calls for the creation of a document. Subject to and without waiving, no such document exist.**

12.     Please provide all medical and infirmary records related to Robert Webb while he was incarcerated by TDCJ.

**RESPONSE: Please refer to documents disclosed by Defendant UTMB**

13.     Please provide all grievances filed by prisoners at the Hodge Unit related to heat, high temperature, or heat index from January 1, 2007 to the present.

**RESPONSE: Defendants will make these documents available for inspection to plaintiff at a mutually convenient time.**

14.     Please provide all grievances filed by prisoners in all TDCJ facilities related to heat, high temperature, or heat index from January 1, 2007 to the present.

**RESPONSE: Objection, over broad and unduly burdensome and not reasonably limited in scope or time. See response to Request #13.**

15.     Please produce all purchase orders for ice, ice machines, water, water bottles, water jugs, and fans from the Hodge Unit from January 1, 2007 to the present.

**RESPONSE: Defendants have been ordered and if in existence will supplement.**

16.    Please produce all documents related to ventilation design at the Hodge Unit, including any documents related to ventilation, air conditioning, air flow, and fan placement in inmate housing areas.

**RESPONSE: Objection, over broad and unduly burdensome and not limited in scope or time and not likely to lead to admissible evidence.  Furthermore, there is a security concern with disclosing this highly sensitive information.**

17.    Please produce all documents related to any decision to not air condition any portion of the Hodge Unit.

**RESPONSE: Defendants have been ordered and if in existence will supplement.**

18.    Please produce all documents related to any additional water or ice provided to inmates in any location Robert Webb was housed at the Hodge Unit during his confinement there.

**RESPONSE: Defendants have been ordered and if in existence will supplement.**

19.    Please produce all documents related to any investigation conducted into Robert Webb's death, including, but not limited to, any autopsy, investigation by the TDCJ Office of the Inspector General, investigation conducted by any other law enforcement body (including, but not limited to the Texas Department of Public Safety) and/or any investigation or peer review conducted by the University of Texas Medical Branch (or any other entity providing medical care to Robert Webb).

**RESPONSE: Objection Over broad, undue burden and not reasonably limited in scope or time.  This is an undue burden as Plaintiffs were provided with copies of all these documents in previously served and answered discovery in *McCullom v. Livingston et al.*, Civil Action No. 3:12-cv-02037, United States District Court, Northern District of Texas Dallas Division.  Subject to and without waiving said objections, see documents previously produced with proper redactions as required by HIPAA provided in *McCollum v. Livingston***

20.    Please produce all documents showing temperatures and heat indexes recorded at the Hodge Unit from January 1, 2007 to the present.

**RESPONSE: Defendants have been ordered and if in existence will supplement.**

21.    Please produce all documents presented to the Texas Board of Criminal Justice related to heat, temperature, heat index, or air conditioning at any TDCJ facility from January 1, 1990 to the present.

**RESPONSE: Objection: Irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Overly broad, unduly burdensome and not reasonably limited in time or scope.**

22.     Please produce all accreditation reports generated by any accrediting bodies since January 1, 2007 pertaining to the Hodge Unit.

**RESPONSE: Defendants have been ordered and if in existence will supplement.**

23.     Please produce and separately identify all records related to any disciplinary actions taken against TDCJ personnel since January 1, 2002 for failing to comply with TDCJ policies and/or procedures related to heat, temperature, and/or heat index at the Hodge Unit.

**RESPONSE: OBJECTION, over broad and unduly burdensome and not reasonably limited in scope or time and not likely to lead to the discovery of admissible evidence.**

24.     Please produce all photographs, audio or video recordings of Robert Webb.

**RESPONSE: Defendants will make these documents available for inspection to plaintiff at a mutually convenient time**

25.     Please produce the autopsies of all inmates who have died in the Hodge Unit since January 1, 2001.

**RESPONSE: Objection, over broad and unduly burdensome and not limited in scope or time. Furthermore, this information is equally accessible to both sides.**

26.     Please produce all documents concerning when rounds (medical or otherwise) were performed to check on Robert Webb while he was the Hodge Unit during July and August 2011.

**RESPONSE: Objection  Defendant objects to the extent the information requested is not in TDCJ's care, custody or control.**

27.     Please produce AD 84 logs for any areas Robert Webb was housed in at the Hodge Unit from June 1, 2011 to September 1, 2011.

**RESPONSE: Defendants will make these documents available for inspection to plaintiff at a mutually convenient time**

28.     Please produce the daily inspection form 10.20 for the areas where Robert Webb was housed in for June 1, 2011 to September 1, 2011.

**RESPONSE: Defendants have been ordered and if in existence will supplement.**

29.     Please produce any sections of the Recreation Department Policy manual which address heat, high temperature, or temperature extremes.

**RESPONSE: Please refer to documents disclosed in *McCollum v. Livingston.***

30.     Please produce all documents received by the risk manager regarding "temperature related incidents," as referenced in AD 10.64, from January 1, 2001 through January 1, 2012.

**RESPONSE:   Objection, over broad, undue burden and nor reasonably limited in scope or time.   In addition the terms "risk manager" and "temperature related incidents" are vague, therefore without further information Defendant cannot answer this question.**

31.     Please produce all documents showing water was delivered to inmate housing areas Robert Webb was housed in, including how much water.

**RESPONSE: Defendants will make these documents available for inspection to plaintiff at a mutually convenient time.**

32.     Please produce all documents related to the inmate heat injury at the Hodge Unit from January 1, 2001 to the present.

**RESPONSE: Objection, over broad and unduly burdensome and not limited in scope or time.  Plaintiff seeks documents that contain "individually identifiable health information" as defined by the Health Insurance Portability and Accountability Act of 1996 or HIPAA. Defendants cannot release these documents without the permission of the named individuals.  Further, to the extent, plaintiff is seeking medical records defendant TDCJ does not have access to inmate medical records.**

33.     Please produce all documents related to any employee heat-related injuries at the Hodge Unit from January 1, 2001 to the present.

**RESPONSE: Objection, over broad and unduly burdensome and not limited in scope or time.  Plaintiff seeks documents that contain "individually identifiable health information" as defined by the Health Insurance Portability and Accountability Act of 1996 or HIPAA. Defendants cannot release these documents without the permission of the named individuals.**

34.     Produce any property of Robert Webb in TDCJ's possession or control.

**RESPONSE: Defendants will make records available for inspection to plaintiff at a mutually convenient time.**

35.     Please produce all tracking logs from any building Robert Webb was housed in at the Hodge Unit, during the period of their incarceration there.

**RESPONSE: Objection, over broad, vague not reasonably limited in scope or time.  Vague as to definition of "tracking logs" therefore without further information Defendant cannot answer this question**

36.     Produce all policies related to intake and receiving of prisoners at Hodge Unit that were in effect in July 2011 and August 2012.

**RESPONSE: Objection, Over broad, undue burden and not reasonably limited in scope or time.   This is an undue burden as Plaintiffs were provided with copies of all these documents in previously served and answered discovery in *McCullom v. Livingston et al.*, Civil Action No. 3:12-cv-02037, United States District Court, Northern District of Texas Dallas Division.  Subject to and without waiving said objections, any documents responsive will be made available for inspection at defendant's offices at a mutually agreed upon time.**

37.     Produce any documents distributed or provided to prisoners notifying inmates about ability to go to cooler areas from May 1, 2011 to September 1, 2012 at the Hodge Unit.

**RESPONSE: Defendants will make these documents available for inspection to plaintiff at a mutually convenient time.**

38.     Produce all Correctional Managed Health Care policies related to heat, heat stress, or temperature extremes in effect from January 1, 2007 to the present.

**RESPONSE: Objection: undue burden, cumulative and over broad.   Subject to and without waving said objection please refer to request for production #26, 27, and 28.**

39.     Produce any documents showing any lockdowns or other security-related events from July 1, 2011 to August 30, 2011 and August 1, 2012 to August 15, 2012 at the Hodge Unit that would have interrupted normal prison activities.

**RESPONSE: Objection, over broad, vague as to "other security related events". Subject to and without waiving, Defendants have ordered these documents, and if in existence will make these documents available for inspection to plaintiff at a mutually convenient time.**

40.     Produce all logs from any building Robert Webb was housed in at the Hodge Unit during July and August 2011 showing which TDCJ employees entered the building.

**RESPONSE: : Please see response to Request #35**

41.     Produce any documents informing prisoners about accommodations available during periods of high temperature from May 1, 2011 to August 30, 2011 at the Hodge Unit.

**RESPONSE: Objection cumulative, Defendants will make these documents available for inspection to plaintiff at a mutually convenient time.**

43.  Please produce all Emergency Action Center Reports, Administrative Reviews, and any OIG Investigations pertaining to the deaths of the following individuals:

A. James Shriver (D.O.D. August 8, 2007)
B. Dionicia Robles (D.O.D. August 13, 2007)
C. Kelly Marcus (D.O.D. August 12, 2011)
D. Alexander Togonidze (D.O.D. August 8, 2011)
E. Charles Cook (D.O.D. August 8, 2011)
F. Michael Martone (D.O.D. August 8, 2011)
G. Robert Webb (D.O.D. August 4, 2011)
H. Thomas Meyers (D.O.D. August 3, 2011)
I. Kenneth Wayne James (D.O.D. August 13, 2011)
J. Douglas Hudson (D.O.D. July 25, 2011)
K. Daniel Alvarado (D.O.D. August 20, 2011)
L. Rodney Adams (D.O.D. August 3, 2012)
M. Albert Hinojosa (D.O.D. August 27, 2012)

**RESPONSE: Objection Over broad, undue burden and not reasonably limited in scope or time.  This is an undue burden as Plaintiffs were provided with these documents in previously served and answered discovery in *McCullom v. Livingston et al.*, Civil Action No. 3:12-cv-02037, United States District Court, Northern District of Texas Dallas Division.  In addition individually identifiable health information as defined by the Health Insurance Portability and Accountability Act of 1996 or (HIPAA) is or may be contained in the documents and as such defendants cannot release these documents without the permission of the individuals identified**

44.  Please produce all documents showing standards related to climate control for any TDCJ agricultural operations, including, but not limited to, pig barns and/or swine operations.

**RESPONSE: Objection, over broad and unduly burdensome and not limited in scope or time and not likely to lead to admissible evidence.  Furthermore, this request is nothing more than pure harassment and not reasonably related to the lawsuit.**

45.  Please produce any requests for proposals for any TDCJ operations that require a contractor to provide climate controlled facilities. This request includes, but is not limited to, any requests for proposals for climate controlled pig barns/swine operations.

**RESPONSE: Objection, over broad and unduly burdensome and not limited in scope or time and not likely to lead to admissible evidence.  Furthermore, this request is nothing more than pure harassment and not reasonably related to the lawsuit**

46.  Please produce any contract or other agreement TDCJ made with Art's Way Scientific for construction of climate-controlled facilities.

**RESPONSE:  Objection, over broad and unduly burdensome and not limited in scope or time and not likely to lead to admissible evidence.  Furthermore, this request is nothing more than pure harassment and not reasonably related to the lawsuit.**

47.     Please produce the complete personnel files for the following Defendants:

      A. Tommie Haynes
      B. Brad Livingston
      C. William Stephens
      D. Rick Thaler
      E. Robert Eason

**RESPONSE: Objection overbroad, not reasonably limited in scope or time. Subject to and without waiving, upon identification of relevant materials, defendant will make these documents available for inspection to plaintiff at a mutually convenient time.**