UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EDNA WEBB, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-3302 |
| | § | |
| BRAD LIVINGSTON, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM & ORDER

Pending before the Court are two motions for partial summary judgment filed by the University of Texas Medical Branch and Owen Murray ("UTMB Defendants"), and the Texas Department of Criminal Justice, Brad Livingston, Rick Thaler, William Stephens, Robert Eason, and Tommie Haynes ("TDCJ Defendants"). (Doc. Nos. 281 & 282.) Defendants have also filed a joint partial motion to dismiss. (Doc. No. 280). Additionally, Plaintiffs have filed a motion to substitute, for Plaintiff Kevin Webb, Edna Webb, Kasey Akins, and Christian Jackson as personal representatives of his estate. (Doc. No. 288.) Finally, TDCJ Defendants have filed a motion for leave to file an amended answer. (Doc. No. 326.) Plaintiffs have moved to strike this amended answer. (Doc. No. 334.) The motions have been fully briefed. Upon careful consideration of the parties' arguments and the relevant statutes and caselaw, the Court finds that it must deny UTMB Defendants and TDCJ Defendants' motions for partial summary judgment; grant Defendants' motion to dismiss; deny Plaintiffs' motion to substitute; deny TDCJ Defendants' motion for leave to amend; and grant Plaintiffs' motion to strike. The reasons for these rulings are explained below.

1

## I. BACKGROUND

Plaintiffs filed this lawsuit against TDCJ, UTMB, and the individual defendants in June of 2013. Plaintiffs allege that unconstitutional and illegal conditions in TDCJ's Hodge Unit led to the death of their son and father, Robert Allen Webb. (Doc. No. 83.) Plaintiff Edna Webb, Robert Webb's mother, brought suit in her individual capacity as a statutory beneficiary of the Texas Wrongful Death Act. (*Id.* at 3.) Plaintiff Kevin Webb, Robert Webb's son, sued as a statutory beneficiary under the Texas Wrongful Death Act *and* as representative of Robert Webb's estate. Plaintiffs Casey Akins and Christian Carson, also children of Robert Webb, sued as statutory beneficiaries of the Texas Wrongful Death Act and as heirs-at-law of the Robert Webb's estate.

Defendants' motions have been filed as a result of the tragic murder of Kevin Webb, Robert Webb's son who sued as representative of Robert Webb's estate. Defendants seek dismissal of Plaintiffs' survival claims, arguing that Plaintiffs now lack capacity to those claims. (Doc. Nos. 281 & 282.) Defendants also move to dismiss Plaintiff Kevin Webb, asserting that he no longer has standing to pursue the wrongful death claim regarding his father's death. (Doc. No. 280.)

Plaintiffs contest both issues. They argue that the remaining plaintiffs maintain capacity to sue on behalf of the estate of Robert Webb, because no administration was necessary for Robert Webb's estate. As support for this contention, they have submitted a Family Settlement Agreement that has been executed by all of Robert Webb's heirs, and provides for payment of debts and the disposition of any potential assets. (Doc. No. 286 at 1.) Plaintiffs also assert that they should be substituted as representatives of Kevin Webb's estate, allowing Kevin Webb's wrongful death claim to remain, despite his death. (Doc. No. 288.)

2

II. ANALYSIS

Because Plaintiffs brought suit under Texas's wrongful death and survival statutes, the Court turns to Texas law to determine whether they have capacity to maintain the lawsuit. *Grandstaff v. City of Borger*, 767 F.2d 161, 172 (5th Cir. 1985). A plaintiff must have both standing and capacity to bring a lawsuit. *Coastal Liquids Transp., L.P. v. Harris Cty. Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex. 2001). Courts and parties often conflate or blur the distinction between standing and capacity, so a short review is necessary.

"The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome, whereas the issue of capacity 'is conceived of as a procedural issue dealing with the personal qualifications of a party to litigate.'" *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848–49 (Tex. 2005) (*citing* 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1559, at 441 (2d ed.1990)). Texas courts have distinguished between these two threshold requirements as follows: "A plaintiff has standing when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has capacity when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Id.* (*citing Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex.1996)).

In their motions for partial summary judgment, Defendants allege that the remaining plaintiffs do not have *capacity* to maintain the survival claim on behalf of Robert Webb's estate. In their motion to dismiss, they argue that Kevin Webb does not have *standing* to maintain his own wrongful death claim. Because these are distinct issues, the Court will discuss them separately.

### A. Plaintiffs' Capacity to Maintain a Survival Claim

At common law, a person's claims for personal injuries did not survive her death. *Austin Nursing Ctr.,* 171 S.W.3d at 849. In 1895, the Legislature abrogated this rule by enacting the survival statute, which now provides: "A cause of action for personal injury to the health, reputation, or person of an injured person does not abate because of the death of the injured person . . . A personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person." Tex. Civ. Prac. & Rem. Code Ann. § 71.021 (West).

Although the statute provides that "[t]he proper plaintiff in a survival action is the estate's personal representative, administrator, or an heir of the decedent," . . . [t]ypically, a personal representative of the decedent's estate is the only person entitled to recover estate property. *Martinez v. Foster*, No. 4:13CV59, 2016 WL 816089, at *4 (E.D. Tex. Mar. 2, 2016). Texas courts have acknowledged, however, that "under certain circumstances heirs may be entitled to sue on behalf of the decedent's estate." *Austin Nursing Ctr.,* 171 S.W.3d at 850. "Heirs at law can maintain a survival suit during the four-year period the law allows for instituting administration proceedings if they allege and prove that there is no administration pending and none necessary." Here, there is no question that Plaintiffs brought the survival claim within four years of Robert Webb's death. Furthermore, Plaintiffs argue that no administration was necessary for Robert Webb's estate, because the estate's sole asset consists of a share in possible proceeds from this lawsuit. Instead, they have submitted a family settlement agreement, executed by all of Robert Webb's heirs.[1]

A family settlement agreement "is an alternative method of administration in Texas that is a favorite of the law." *Shepherd v. Ledford*, 962 S.W.2d 28, 31–32 (Tex. 1998). Section 201.001 of the Texas Probate Code dictates that, when a person dies without a will or a spouse,

---

[1] Although Kevin Webb was murdered before the family settlement agreement was executed, Kevin's only heir, his minor child P.W., is represented in the agreement through P.W.'s mother.

the estate descends immediately to the person's children and the children's descendants. Tex. Est. Code Ann. § 201.001 (West); *see also Rennie v. Young*, No. 05-14-01109-CV, 2015 WL 4600214, at *3 (Tex. App. July 31, 2015). The heirs are then responsible for paying any debts of the estate. However, "[e]ach heir is liable only for a proportional share of the debt, and the extent of the liability is limited to the property received from the estate." Thus, if an estate has debts but no assets, the heirs are not responsible for paying the debts. *See Potts v. W. Q. Richards Mem'l Hosp.*, 558 S.W.2d 939, 943 (Tex. Civ. App. 1977) (holding that "the creditor is not entitled to recover from each of the distributees the full amount of its debt, that each distributee is liable only for a proportional share of the creditor's debt, and that the extent of the liability of each distributee is limited to the property received by each such distributee.").

In *Pitner*, the Fifth Circuit held that Texas's Probate Code permitted formal judicial administration of the estate under a will *only* if such a necessity could be shown. Otherwise, an alternative to formal administration, such as a family settlement arrangement, must be used. *Pitner v. United States*, 388 F.2d 651, 655–56 (5th Cir. 1967). In *Sheperd*, the Supreme Court of Texas extended *Pitner* to the administration of an intestate decedent's estate. The court explained, "[w]e see no reason why the *Pitner* rationale approving no administration when the devisees under a will make an agreement to distribute the estate and pay the bills does not apply with equal force in the situation where the heirs of an intestate decedent make an agreement to distribute the estate and pay the bills." *Shepherd*, 962 S.W.2d at 34.

Here, Plaintiffs—all of Robert Webb's heirs, as well as his mother—have executed a family settlement agreement dictating how they will distribute the proceeds from any possible recovery in this case. The family settlement agreement sets forth that the estate proceeds will pay "all remaining debts" before being distributed to the heirs. (Doc. No. 286-3 at 2.) UTMB

Defendants argue that a family settlement agreement, in this context, does not suffice as an alternative to formal estate administration because "Plaintiffs failed to meet their burden to not only allege but prove that there are no debts against the estate." (Doc. No. 281 at 7.) But Plaintiffs need not prove that there are no debts against the estate. They need only show that they have arranged to pay the debts of the estate in their family settlement agreement. *Pitner*, 388 F.2d at 656 (emphasis added) (holding that an informal family settlement "leaves the beneficiaries of an estate free to arrange among themselves for the distribution of the estate and *for the payment of expenses from that estate*"); *see also Sherperd*, 962 S.W.2d at 34 (emphasis added) (finding no requirement for formal administration "when the devisees under a will make an agreement to *distribute the estate and pay the bills*.").

This situation is similar to the one considered in *Sheperd*. There, the defendants argued that the wife of an intestate decedent did not have standing[2] to sue as decedent's heir because she did not plead and prove that no administration was pending or necessary. *Shepherd*, 962 S.W.2d at 34. The decedent had died with no real property and no children, so his estate vested immediately with his wife, pursuant to the Texas Probate Code. *Id.* However, his estate had more than the two debts allowed to qualify for an informal estate administration. *Id.* By the time the court considered the matter, decedent's wife had paid the estate's debts, and had entered an agreement with other family members dividing the estate. *Id.* Thus, the court held that no formal administration of the estate was necessary, despite the debts against the estate, and that the decedent's wife could maintain her lawsuit on behalf of the estate. *Id.* at 34.

Here, Robert Webb died intestate. He had no wife, but he did have children, so his estate vested immediately with his children, pursuant to Texas Probate Code §200.001(b). He had no

---

[2] The defendants' argument would have been more properly construed as one regarding capacity.

real property and no personal property. Thus, his estate consists entirely of any potential proceeds from this case. The parties dispute the number of debts against the estate, but they agree that there is at least one debt, for past child support. (Doc. No. 294 at 3.) However, because this debt has not yet been paid, and because Robert Webb has multiple heirs, UTMB Defendants contend that this situation is distinguishable from *Sheperd*.

As the Court has already stated, an heir is responsible for an estate's debts only if and to the degree that it receives a share of the estate. An heir does not have to pay a debt unless and until it receives something from the estate. In this case, there was no estate to distribute—Robert Webb had no real or personal property. Thus, as Plaintiffs point out, if they fail to recover damages in this lawsuit, they will be under no obligation to pay the debts of Robert Webb's estate. As such, it would not make sense to require Plaintiffs to pay the debts, out of their own pockets, in order to qualify for an informal administration. Furthermore, if they do recover, the family settlement agreement indicates that the debts will be paid before any of the proceeds are distributed. (Doc. No. 286-3 at 2.) Finally, it is reasonable to assume that, had Plaintiffs sought formal administration, their petition would probably have been rejected on the ground of no necessity: there is currently no real or personal property to distribute, and while debt(s) remain against the estate, there is nothing with which to pay those debts.

Also, *Sheperd* did not turn on the fact that the plaintiff was the decedent's only heir. Although the opinion mentions that the decedent had no children, meaning his estate vested immediately in his wife, it does not indicate what weight, if any, this fact is given. Furthermore, although Robert Webb had children, he had no wife, so the estate vested immediately in his children—a similarly simple distribution. Finally, although the decedent in *Sheperd* had only one heir, that heir entered into a family settlement agreement with other family members. Similarly,

7

in this case, Robert Webb's heirs have entered into a family settlement agreement with each other and with Robert Webb's mother "to distribute the estate and pay the bills." *Shepherd*, 962 S.W.2d at 34. Because there is no real or personal property in Robert Webb's estate with which to pay any debts, and because all of Robert Webb's heirs have entered into an agreement regarding the distribution of the estate and payment of any debts, the Court finds that this situation is analogous to the one considered by the Supreme Court of Texas in *Sheperd*. "Accordingly, [the Court] hold[s] that under the facts and because of the family agreement, no formal administration was necessary." *Id.*

TDCJ Defendants focus more on the timing of the family settlement agreement. They argue that, under Texas law, an estate must be administered within four years. (Doc. No. 282 at 5.) Because the family settlement agreement in this case was executed more than four years after Robert Webb's death, TDCJ Defendants argue, the agreement is untimely. But the four-year limitation referred to by Defendants refers to formal estate administrations that require filing with a court. Tex. Est. Code § 301.002 ("an application for the grant of letters testamentary or of administration of an estate must be filed not later than the fourth anniversary of the decedent's death."). A family settlement agreement, however, is an *alternative* and informal method of administering an estate, which does not require the heirs to file a formal administration in the court. *Austin Nursing Ctr.,* 171 S.W.3d at 851. Indeed, the Supreme Court of Texas has found that "a family agreement regarding the disposition of the estate's assets can provide support for the assertion that no administration of the decedent's estate is necessary." *Id.* Thus, because the family settlement agreement in this case is an informal administration which provides support for Plaintiffs' assertion that there is no need for a formal administration of the estate, the four-year statute of limitations for filing an administration does not apply.

8

Finally, TDCJ Defendants assert that the family settlement agreement is insufficient because it was executed after Kevin Webb's murder, and thereby does not include all of Robert Webb's heirs. They state, in support of this argument, that "P.W., Kevin's only son is not an heir to the estate of Robert Webb." (Doc. No. 294 at 2.) The Court disagrees. The Texas Probate Code provides that "[i]f a person who dies intestate does not leave a spouse . . . [t]he person's estate descends and passes to the person's children and the children's descendants. Tex. Est. Code Ann. § 201.001. P.W. is a descendant of Kevin Webb, and thus is an heir of Robert Webb. Because P.W. is a minor, his interests are represented by his mother. His mother, Sarah Ann Lantier Webb, has signed the family settlement agreement. Thus, the agreement does include all of Robert Webb's heirs.

Defendants also take issue with the way Plaintiffs agreed to distribute the estate in the family settlement agreement. (Doc. Nos. 281 at 9; 282 at 6.) But the purpose of a family settlement agreement is to allow a decedent's heirs to agree, amongst themselves, as to the proper distribution of an estate. *Pitner*, 388 F.2d at 656 (holding that an informal family settlement "leaves the beneficiaries of an estate free to arrange among themselves for the distribution of the estate and for the payment of expenses from that estate."). Because all of Robert Webb's heirs are represented in the family settlement agreement and the debts against the estate are accounted for, the Court finds that Defendants do not have standing to object to the agreed-upon distribution of the estate. *Abbott v. Foy*, 662 S.W.2d 629 (App. 14 Dist. 1983) (internal quotations omitted) ("Person interested in the estate, for purposes of will contests, is one who has legally ascertained pecuniary interests, real or prospective, absolute or contingent, which will be impaired, benefited, or in some manner materially affected by probate of will"); *Matter of Estate of Hodges*, 725 S.W.2d 265, 268 (Tex. App. 1986) (holding that because

9

executor was not an "interested person," he did not have standing to challenge valid family settlement agreement.)

For these reasons, the Court finds that Plaintiffs have adequately proven that no formal estate administration was necessary, or likely permissible, after Robert Webb's death. This contention is supported by the execution of a valid family settlement agreement. Accordingly, Plaintiffs have capacity to maintain their survival claim on behalf of R.W., and UTMB and TDCJ Defendants' motions for partial summary judgment are denied.

### B. Plaintiffs' Standing to Maintain Kevin Webb's Wrongful Death Claim

UTMB and TDCJ Defendants seek dismissal of Kevin Webb's wrongful death claims under Federal Rule of Civil Procedure 12(b)(1) for lack of standing. (Doc. No. 280.) Defendants argue that, under Texas law, a wrongful death claim terminates upon the beneficiary's death, and does not survive to the beneficiary's heirs. (Doc. No. 280 at 4.) Plaintiffs insist that Kevin Webb's wrongful death claim should become a survival claim and "be part of his estate, just like any other asset." (Doc. No. 287 at 3.) As such, they have filed a motion to substitute Edna Webb, Kasey Akins, and Christian Jackson as the personal representatives of Kevin Webb's estate, in order to prosecute the wrongful death claim on behalf of the estate of Kevin Webb. (Doc. No. 288.)

The Court has addressed this issue in a related case, *Hinojosa v. Livingston, et al.*, No. 4:14-cv-3311 (S.D. Tex. Aug. 12, 2016), ECF No. 135. There, the plaintiff, who had brought a wrongful death claim on behalf of her son, passed away during litigation. *Id.* at 2. Defendants moved to dismiss her wrongful death claim on the same grounds argued here. *Id.* at 2-3. The Court agreed with Defendants, and dismissed the plaintiff's wrongful death claim. The Court discussed Texas's Wrongful Death Act and its interpretation by Texas courts as follows:

10

> The Wrongful Death Act states that a wrongful death claim is for the "exclusive" benefit of the decedent's surviving spouse, children, and parents. Tex. Civ. Prac. & Rem.Code Ann. § 71.004. Additionally, the Act states that damages awarded by the jury must be divided "among the individuals who are entitled to recover and who are alive at that time." Tex. Civ. Prac. & Rem.Code Ann. § 71.021.
>
> These passages have been interpreted to mean that a claim for wrongful death does not survive the beneficiary's death. *See, i.e., Wackenhut Corr. Corp. v. de la Rosa*, 305 S.W.3d 594, 633 (Tex. App. 2009) abrogated by *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143 (Tex. 2015) (finding that "the legislature expressly contemplated that a beneficiary's right to recover would terminate upon the beneficiary's death"); *Coffey v. Johnson*, 142 S.W.3d 414, 417 (Tex. App. 2004) (stating that "[t]he right conferred by the Act is considered to be personal, and it does not survive the death of a beneficiary"); *Johnson v. City of Houston*, 813 S.W.2d 227, 229 (Tex. App. 1991), writ den'd (holding that "[a] cause of action for wrongful death ceases to exist upon the death of the named beneficiary.").
>
> Furthermore, the Texas Survival Statute does not preserve the wrongful death claim. Texas courts of appeals have held that the survival statute "only provides for survival of the deceased's cause of action for the deceased's personal injuries and death, not for the survival of a wrongful death beneficiary's cause of action." *Wackenhut*, 305 S.W.3d at 634; *see also Huntington v. Walker's Austex Chili Co.*, 285 S.W.2d 255, 258 (Tex. Civ. App. 1955), writ refused.
>
> Plaintiff does not identify, and the Court cannot find, any cases holding that a wrongful death action does survive the beneficiary's death. *Id.* at 3-4.

Plaintiffs have not identified any change in the law since this Court's opinion in *Hinojosa*. Thus, the Court finds that Kevin Webb's wrongful death claim was extinguished upon his death and did not pass to his estate. *See Wackenhut*, 305 S.W.3d at 634 ("Because Gregorio, Sr.'s claim did not survive his death, it follows that his estate lacked standing to pursue the claim."). Although Kevin Webb's wrongful death claim has terminated, the remaining Plaintiffs, as Robert Webb's mother and children, maintain standing to pursue their own wrongful death claims. Tex. Civ. Prac. & Rem.Code Ann. § 71.004(a) ("An action to recover damages as provided by this subchapter is for the exclusive benefit of the surviving spouse, children, and parents of the deceased.").

Because Kevin Webb's wrongful death claim was extinguished upon his death,

11

Defendants' motion to dismiss his wrongful death claim is granted. Accordingly, Plaintiffs' motion to substitute the remaining plaintiffs as representatives of Kevin Webb's estate, in order to prosecute his wrongful death claim, is denied.

### C. Defendants' Motion for Leave to File an Amended Answer

Defendants filed a motion for leave to file an amended answer on April 11, 2017. Defendants seek to "unify the currently separate answers for Haynes and Eason, and Livingston, Thaler and Stephens. Defendants also seek to amend their answers in order to bring the answer in this case in line with other answers across this litigation and to appropriately respond to allegations in accordance with *Webb* specifically."

Rule 15 of the Federal Rules of Civil Procedure states that "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Court may deny such leave, however, upon a finding of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, [or] futility of amendment." *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 608 (5th Cir. 1998) (internal quotation marks omitted).

Defendants aver that good cause exists to allow leave to amend their answer for several reasons. First, Defendants state that, at the beginning of this case, Defendants Tommie Haynes and Robert Eason were represented separately from Brad Livingston, William Stephens, and Rick Thaler, meaning two separate answers were filed. Since that time, Defendants state, their representation has been unified, so Defendants seek to file a unified answer for these five individual defendants. But Defendants cite prior answers, specifically Docket Numbers 13 and 100, which are no longer live, in order to show that the answers were filed separately. In fact, however, Defendants filed an answer in February of 2015 which unifies Haynes, Eason,

Livingston, Stephens, and Thaler's response. (Doc. No. 205.) Thus, this reason for allowing leave to amend the answer is unpersuasive.

Defendants also state that an amendment is necessary because *Webb* has been scheduled as the first case to proceed in a series of heat-related cases, but the answers in other cases have been updated more recently than the April, 2014 answer in *Webb*. (Doc. No. 326 at 3.) Again, however, Defendants' live answer was actually filed in February 2015, more recently than, or contemporaneous with, answers filed in other related cases. *See Adams et al. v. Livingston et al.*, No. 4:14-cv-3302 (S.D. Tex.) ECF No. 82 (Amended Answer filed on September 2, 2014); *Togonidze et al. v. Livingston et al.*, No. 4:14-cv-3324 (S.D. Tex.) ECF No. 67 (Amended Answer filed on February 5, 2015); *Hinojosa et al. v. Livingston et al.*, No. 4:14-cv-3311 (S.D. Tex.) ECF Nos. 105 & 106 (Amended Answers filed on December 8, 2014). Accordingly, this reason for allowing leave to amend the answer is also unpersuasive.

Finally, Defendants claim that leave to amend should be granted because Kevin Webb's death raises issues of standing, which is addressed in Defendants' proposed amended answer. (Doc. No. 326 at 3.) But Defendants have already raised the issue of standing, as well as capacity, in the two motions for partial summary judgment and the motion to dismiss discussed above. Furthermore, since Defendants correctly note that "[s]tanding is a jurisdictional requirement that cannot be waived," the Court does not see why Defendants will be prejudiced by not pleading standing arguments in their answer. (Doc. No. 326 at 3.)

Even if, as Defendants claim, Defendants had not filed an answer since August of 2013 and April of 2014, the Court still would not grant leave for Defendants to amend, as an amendment at this time would be unduly prejudicial to Plaintiffs. Discovery closed in *Webb* on May 10, 2017. (Doc. No. 324; ECF Minute Entry for April 13, 2017.) Dispositive motions are

due on June 8, 2017. (*Id.*) Although none of the parties appears to have acted in bad faith, the Court has struggled to keep the heat-related cases on schedule, having fielded three motions for extensions of time since imposing a scheduling order in October of 2016. (Doc. Nos. 264, 300, & 324.) *Webb* was originally filed in June of 2013, and Plaintiffs are still waiting for the merits of their claims to be resolved. Allowing Defendants to amend their answer this far into the case would inevitably risk further extension of deadlines. For these reasons, Defendants' motion for leave to amend their answer is denied. Accordingly, Plaintiffs' motion to strike Defendants' amended answer is granted.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** UTMB Defendants and TDCJ Defendants' motions for partial summary judgment; **GRANTS** Defendants' motion to dismiss; **DENIES** Plaintiffs' motion to substitute; **DENIES** TDCJ Defendants' motion for leave to amend; and **GRANTS** Plaintiffs' motion to strike.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on the 16th of May, 2017.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE