IN THE UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

DEC 1 1 2017

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| GWEN TOGONIDZE, | § | |
| Plaintiff, | § | |
| v. | § | No. 4:14-cv-03324 |
| BRAD LIVINGSTON, et al., | § | |
| Defendants. | § | |

## MICHAEL W. BOHANNAN'S MOTION TO INTERVENE

TO THE HONORABLE KEITH P. ELLISON, JUDGE OF THE COURT:

COMES NOW, Michael Bohannan, Intervenor, and files his motion to intervene as a party-plaintiff, as authorized by Federal Rule of Civil Procedure 24.

### I.   INTRODUCTION

Plaintiff is Gwen Togonidze; defendant is Brad Livingston and others; internenor is Michael W. Bohannan.

Plaintiff sued the defendants for their failure to maintain constitutionally reasonable temperature and humidity levels in their Michael Unit which resulted in the death of Mr. Togonidze.

Bohannan's motion is timely. NAACP v. New York, 413 U.S. 345, 365 (1973); In re Lease Oil Antitrust Litig., 570 F.3d 244, 248 (5th Cir. 2009). Bohannan learned of the suit, and of its involvement with the TDCJ Michael Unit, when he took receipt of Judge Ellison's May 17, 2017 letter. Because Bohannan is a

prisoner of the State of Texas, he must first attempt to resolve the matters raised through any administrative process which is available to him.  As the attached affidavit and grievance copies verify, Bohannan has been diligently attempting to resolve the constitutional violations through that administrative process, since receipt of Judge Ellison's May 17th letter.  While those remedies are not fully exhausted for some of the constitutional violations Bohannan was/is being subjected to, a number of them are exhausted; or have been defaulted by the agency's refusal to process them in a rule-compliant manner.  As such, Bohannan has filed this motion without delay.

## II.  ARGUMENT

Bohannan has the right to intervene in this suit under Fed.R. Civ.P. 24(a)(2) for the following reasons:

a.  Bohannan has a direct, substantial, and legally protectable interest in the subject matter of the suit. Brumfield v. Dodd, 749 F.3d 339, 343-44 (5th Cir. 2014).  As the affidavit and grievance attached show, Bohannan is being subjected to the same unconstitutional conditions of confinement that resulted in Mr. Togonidze's death.  Bohannan has been subjected to retaliation by the defendants and/or their agents because of his attempts to resolve those conditions. Bohannan is under the impression that the defendants have implemented remedial measures to ameliorate the excessive heat and humidity levels prevalent at the Michael Unit, according to what they have reported to the Court.

However, as Bohannan's attachments verify, the defendants' remedial claims are, for the most part, nothing more than smoke and mirrors, and that the agency cannot depend upon its staff to implement and maintain the measures it is representing will elminate the unconstitutional conditions present.  Bohannan has an interest not only in the court's correction of the shared unconstitutional impositions but also in presenting evidence he has personal knowledge of relating to the question as to the validity/value of the defendants' remedial claims.

b.    There is a risk that Bohannan's ability to protect his interests may be impaired without intervention. John Doe #1 v. Glickman, 256 F.3d 371, 380 (5th Cir. 2001).  Without Bohannan's intervention in the cause, his ability to obtain effective relief for the same asserted constitutional violations may be impaired by the operation of res judicata, collateral estoppel, or stare decisis.

c.    The present parties in the suit may not adequately represent Bohannan's interests. Brumfield, 749 F.3d @ 345.  Bohannan believes that the present plaintiff will not make all of Bohannan's arguments because her interest in the suit is different from the applicant's interests.  Mrs. Togonidze's interest, and rightly so, is the death of Mr. Togonidze. Bohannan is interested in the agency's continued violations and retaliation imposed upon those who try to address the ongoing violations.  Bohannan would offer elements to the proceedings that the other plaintiff would neglect or not

- 3 -

be in a position of being able to present.  Bohannan has
the personal knowledge of the continuing nature of the
unconstitutional violations and as to whether or not the
defendants are making fictitious representations to the
Court as to their alleged remedial actions.

Bohannan has attached sufficient documentation, an affidavit
and copies of the formal grievances he has filed, which provide
the Court and the parties with sufficient notice of his interests.
He will of course follow up with his actual complaint once the
state prison officials finally provide their responses to the
final resolution step (or when they fail to do so within the
time their policy allows for such).  The absence of Bohannan's
actual pleading, at this time, is not a critical deficiency to
his motion to intervene. <u>Arizonans for Official English v. Arizona</u>,
520 U.S. 43, 57 (1997).

### III.  <u>CONCLUSION</u>

Bohannan, like Mr. Togonidze, is being subjected to the
unconstitutional heat and humidity present on the TDCJ's Michael
Unit (and which is present on most of its units).  Bohannan has
been retaliated against because he has tried to informally address
those conditions (a requirement of the agency's grievance process).
As such, and because of the foregoing, Bohannan has a right to
intervene in this cause of action.  Should he not possess that right,
the Court should grant Bohannan permissive intervention.

WHEREFORE, PREMISES CONSIDERED, Bohannan asks the Court to
grant this motion allowing him to intervene as a party-plaintiff.

Respectfully submitted,

Michael W. Bohannan   #1841746
2664 FM 2054
Tennessee Colony, Texas   75886

## CERTIFICATE OF MAILING AND SERVICE

I, Michael Bohannan, being presently imprisoned in Anderson County, Texas, and under penalty of perjury, do hereby affirm that I have placed a true and correct copy of this motion, in the prison mail system, first-class postage prepaid, addressed to:

Clerk of the Court
U.S. Dist. Court – Southern Dist. of Texas
515 Rusk Street, Room 5401
Houston, Texas   77002

Jeffrey Scott Edwards, Att'y at Law
1101 East 11th Street
Austin, Texas   78702

Cynthia Burton & Lacey Mase, Att'ys at Law
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas   78711-2548

on this the __6th__ day of __December__ , 2017.

Intervenor/Affiant

STATE OF TEXAS                    §

                                 §              AFFIDAVIT

COUNTY OF ANDERSON               §

My name is Michael Bohannan, I am over eighteen years of age, of sound mind, capable of making this affidavit. The statements made herein are true and correct.

## BACKGROUND

1. I have been housed in the TDCJ-CID's Michael Unit since December of 2016.

2. I am a G2 State Approved Trustee III, with no major disciplinary convictions in years.

3. A prison healthcare provider has imposed health restrictions upon me prohibiting me from exposure to extreme temperatures and notified Mark Sandlin and the Michael Unit officials of that medical restriction.

4. I am over the age of 61, am morbidly obese, and am under medical treatment with diuretics (for hypertension) that inhibit sweating.

5. The TDCJ-Michael Unit officials, including but not limited to, Christopher Saxon, Mark Sandlin, Charles Meador, and Tina White, are aware of my age, my size, and of my medically imposed temperature restrictions; and were on August 11, 2017.

6. In early January of 2017, I was housed in 19 Building's "X" Dorm, bunk 19, and remained there until August 18, 2017.

7. On, and before, August 11, 2017, a number of components of "X" Dorm's designed ventilation system were inoperable, and had been the entire time I was housed there. I believe, and have good cause to believe, that those components had been inoperable, for two or more years, because maintenance staff would falsify work orders indicating no problem found.

8. On August 11, 2017, the Michael Unit's temperature logs indicate the high temperature was _____ , and the high heat index was _____ .

## HEAT-RELATED COMPLAINTS

9. On July 11, 2011, I sent an Inmate Request to Officials form (I-60) to Michael Unit Senior Warden C. Monroe informing him that most of the large fans (brought in as heat-remedial measures) are not hooked up to the emergency electrical circuits; meaning those fans are worthless when there is a power outage (a common occurrence).

1. On September 19, 2017, I sent an I-60 to the Michael Unit's risk manager, Tina White, requesting these temperatures. She has refused to provide them.

10. On July 14, 2017, I sent I-60's to Michael Unit Asst. Warden Charles Meador and unit risk manager Tina White informing them that most of the large fans are not hooked up to the emergency electrical circuits.

11. On July 27, 2017, I filed a Step One Grievance, #2017179298, which addressed fourteen (14) different ways the Michael Unit administration and staff were failing to implement appropriate and, in some cases required, remedial measures to ameliorate the excessive and dangerous heat present.

12. On August 3, 2017, I filed a Step One Grievance, #2017185893, which addressed the Michael Unit administration and staff's refusal to provide adequate ice in the offender housing areas, specifying how, on nine (9) of twelve (12) consecutive days, ice was unavailable during the hottest times of the day. The unit grievance office staff refused to provide any response to the grievance within the 40 days provided for such.

13. On August 4, 2017, I filed a Step One Grievance, 2017185901, which addressed the Michael Unit maintenance department's rendering the air conditioning units inoperable for the unit's two designated heat-respite areas — and medical staff's refusal to address that lack of cooling.

14. On August 8, 2017, M. Price, Unit Grievance Investigator III, refused to process/investigate Step One Grievance #2017185901 (inoperable respite area air-conditioning). Unit grievance office staff refused to process the grievance on August 24, 2017 and September 7, 2017, under the number 2017185917.

15. On August 10, 2017, Asst. Warden Charles Meador responded to Step One Grievance #2017179298 (which addressed the fourteen unimplemented remedial measures). Warden Meador stated a single work order had been generated, for a single deficiency, and he acknowledged that deficiency had not yet been repaired/fixed, and that he had no idea when that repair might occur. Warden Meador said that it would be done "in a timely manner".

<u>RETALIATORY DRUG TESTING</u>

16. TDCJ Policy AD-03.21 (rev.4) §I(B) mandates that drug testing "shall not be used for harassment or retaliation".

17. On August 11, 2017, Sgt. Christopher Saxon and an unknown female correctional officer, entered "X" Dorm to conduct controlled substance testing.

18. On August 11, 2017, Sgt. Saxon and the female officer set up on one of the dayroom tables, in the middle of the dayroom, where the dayroom fans were blowing. The female officer called out my bunk number to come get one of the testing containers/cups.

19. At the time described in Paragraph 18 above, because of the excessive heat and humidity, I was lying on my bunk in front of my personal fan, wearing shorts only, with a wet cooling towel placed upon me. When I heard my bunk number called, I went to get the testing cup. The female officer

Initials ━━━━

told me I needed to get a shirt on.  I explained to her that I was having trouble with the excessive heat, but she told me I must have a shirt on to receive the testing container.  I returned to my assigned cubicle, fan, and cooling towel.

20.  At the time described in Paragraph 18 above, Sgt. Saxon came to my cubicle and told me I had to put a shirt on or he would cite me for refusing to take the controlled substance test.  I told him that I was not refusing the test, that I was having trouble with the heat already, and putting on a shirt would only aggravate that; that he should be more concerned about the fact the dorm's ventilation was not working properly than he was my shirt.  I even pointed out to Sgt. Saxon how he was sweating profusely.  He told me that if he can be hot, I can be too, I put on my shirt, obtained the testing container, went to the toilet area, and provided a clean specimen.

21.  On September 19, 2017, I submitted an I-60 to the Micahel Unit Drug Testing Coordinator (Sgt. Saxon.), asking whether my being subjected to substance abuse testing was "targeted, random, or based on reasonable suspicion"; the three types of tests permitted under TDCJ Policy AD-03.21.

22.  On September 25, 2017, I received a response from Sgt. Saxon  telling me I was tested because of "reasonable suspicion".

23.  Shortly after receiving the response noted in Paragraph 22 above, I sent another I-60 to Sgt. Saxon  asking for the basis for that "reasonable suspicion".

24.  As of the date of this affidavit, Sgt. Christopher Saxon  has been unable to provide me any basis for any "reasonable suspicion" for subjecting me to the substance abuse testing.

25.  The TDCJ Parole Division and C.I.D. have given me hundreds of urinalysis tests over the past thrity-plus years.  Never before had I been tested where the tester did not watch to insure the urine specimen came from me, and never have I had a positive [failing] test.  None of my criminal convictions/accusations are drug or alcohol related.

26.  I believe, and have good reason to believe, that Sgt. Saxon  had no reasonable basis for any suspicion, and had no reasonable suspicion, for subjecting me to the August 11, 2017 testing.

27.  The drug testing being conducted by Sgt. Saxon  was nothing but a retaliatory ruse.  The "X" Dorm security video tapes verify that he and the female officer[2] gave the offenders specimen cups and sent them to the toilet/urinal area, OUT OF THEIR SIGHT, where those offenders could

---

[2]  Why did Sgt. Saxon  even have a female officer conducting urinalysis testing of males since that violated TDCJ Safe Prison and P.R.E.A. policies?  The fact she was young and pretty surely had nothing to do with his wanting her to spend the time with him.

Initials  ———

have had any of the other offenders in that area (and there were a number present) provide them a sample.

28. TDCJ written policy provides that Sgt. Saxon be trained in the procedures for performing drug testing, that the offender is escorted to a designated testing area, that the offender be strip searched before testing, that the offender be required to wash his hands with soap and water before testing, that the offender then put on latex gloves prior to testing, and that the offender be visually observed while urinating. Because Sgt. Saxon did none of the above, as the security tapes verify, after having been trained to do so, verifies that the testing was a ruse and was done with the sole intention to harass and intimidate me in the dangerously hot living area.

## RETALIATORY HOUSING RELOCATION

29. Mark Sandlin, the Michael Unit Classification Chief, has provided me a written statement that, on or before August 18, 2017, Sgt. Saxon asked him to retaliatorily move me from "X" Dorm, claiming I was disrespectful to him when he instructed me to put my shirt on.

30. TDCJ's Disciplinary Rules, GR-106, require that when an employee has knowledge of any act by an offender that violates the rules or regulations of TDCJ, that employee shall first attempt to resolve the matter informally. If that is not appropriate, the employee shall bring the matter to a supervisor or complete a formal disciplinary report. If the supervisor cannot resolve the matter informally, an offense report shall be completed.

31. TDCJ's Disciplinary Policy, GR-106, provides for the following offenses:

24.0 Refusing or failing to obey orders
...
42.0 Use of indecent or vulgar language or gestures in the presence of or directed at an employee or any person who is not an offender.
...
45.0 Violation of written or posted TDCJ rule not contained in these rules but consistent with these rules.

32. TDCJ Disciplinary Policy, GR-106, provides that punishment may only be imposed after notice and a hearing. The policy makes no provision for the use of housing reassignment as a punishment for ANY offense; nor as an informal resolution option.

33. Sgt. Saxon has never accused me, nor charged me with, any disciplinary infraction.

34. On August 17, 2017, I placed an I-60 form in the prison mailbox, addressed to the Michael Unit's Risk Manager, Tina White. That I-60 addressed the Michael Unit's policy/practice of having offenders spray fire hoses in the offender housing areas (for cleaning purposes allegedly) in mid-day summer heat, raising the already dangerously high humidity levels.

Initials ———

35. On August 18, 2017, Mark Sandlin retaliatorily reassigned my housing from "X" Dorm to cell housing in 4 Bldg. D-Pod, 2-Section, Cell 31B.

36. Mr. Sandlin, at the time of the retaliatory housing relocation addressed in Paragraph 35 above, was aware of the following:

   a) that medical staff had determined that my health necessitated a restriction from excessive heat exposure;

   b) that offenders on the Michael Unit in dorm housing have direct access to iced water and a cold shower 24-hours a day, seven days a week;

   c) that offenders on the Michael Unit in cell housing only have access to iced water and a cold shower during the limited times they are allowed access to the dayrooms;

   d) that offenders on the Michael Unit in cell housing are not provided dayroom access on most days from 10:30pm through 7:30am;

   e) that offenders on the Michael Unit in cell housing are frequently locked-down in their cells during the 7:30am to 10:30pm time (and at the hottest times of the day) because of staff shortages, recounts, and lockdowns;

   f) that offenders on the Michael Unit in cell housing, when the dayrooms are open, are provided ingress/egress to those dayrooms on an hourly basis, if that;

   g) that the windows in D-Pod 2-Section dayroom have all had their screens removed allowing the infiltration of insects, vermin, and birds;

   h) that the windows in each of the 24 cells in D-Pod 2-Section have their screens removed, ripped out, torn, or with large holes in them allowing for the infiltration of insects, vermin, and birds;

   i) that the agency's policy/practice is not to repair/replace screens, forcing offenders in cell housing to have to choose between the wildlife infiltration or closing the windows which were designed to provide airflow for health reasons, and to ameliorate the dangerous heat and humidity levels;

   j) that offenders on the Michael Unit in dorm housing have an emergency call button which they have access to at all times;

   k) that offenders on the Michael Unit housed in D-Pod 2-Section have no call buttons in their cells so they are unable to promptly contact staff when they are locked in their cells (unless another offender is out in the dayroom area and willing to do so st the time);

   l) that on the Michael Unit all the cells in D-Pod 2-Section have uninsulated concrete walls that face westward and absorb the sun's heat all afternoon and radiate that heat into those cells throughout the night while those offenders are locked in their cells without direct access to the iced water or cold showers providied for heat remediation;

   m) that D-Pod 2-Section Cell 31B had no working lighting in it; and

   n) that D-Pod 2-Section Cell 31B had no working hot water in its sink.

37. On August 23, 2017, I spoke to Assistant Warden Charles Meador, in front of #3 chow hall, regarding the retaliatory move Mr. Sandlin had made jeopardizing my health and safety. Asst. Warden Meador assured me that offenders on the Michael Unit are NOT moved for complaining about the heat. He told me he would look into the matter.

38. On August 29, 2017, I received the written response from Mr. Sandlin in

which he verified he had made the retaliatory cell change because Sgt. Saxon had requested he do so, claiming Sgt. Saxton "told you to put your shirt on and you were disrespectful to him".

39. On August 31, 2017, I spoke to Assistant Warden Meador, in front of #8 chow hall, and told him about the response I had received from Mr. Sandlin on August 29th.  Asst. Warden Meador told me he was going to speak with Sgt. Saxon  and see what was going on.

40. On September 7, 2017, unit maintenance staff replaced the light fixture and bulbs in D-Pod 2-Section Cell 31B.

41. On September 8, 2017, I submitted an I-60 form to Tina White, the Michael Unit's Risk Manager, informing her of the retaliatory move having been imposed upon me because of my complaining about the heat, how it was jeopardizing my health and safety, how I was beginning the preparation of this affidavit, and requesting her assistance in correcting the matters.

42. As of the date of this affidavit, the hot water and screens in D-Pod 2-Section Cell 31B have not been repaired or replaced, nor have the screens in that dayroom.

43. As of the date of this affidavit, Tina White has not responded to my September 8rh I-60 requesting her involvement.

44. As of the date of this affidavit, Asst. Warden Meador has not taken any corrective action in these matters.

45. As of the date of this affidavit, Mr. Sandlin has refused to erturn me to the dorm housing best suited for my medical conditions.

## ADMINISTRATIVE REMEDY EXHAUSTION

### A.  Screens

46. On October 7, 2015, the TDCJ provided a Step Two Grievance response which stated in part:
    " Screens were removed from windows after being destroyed by offenders. Due to the cost of replacing them and a limited budget, unit maintenance is unable to replace them".
    That grievance was numbered 2015201407.

### B.  Failure To Implement Reasonable
### Remedial Heat Measures

47. I addressed the failure to implement the fourteen (14) reasonable remedial heat measures, as addressed in Paragraphs 11 and 15 above, in Grievance No. 2017179298.

48. On August 17, 2017, I filed the Step Two appeal on No. 2017179298.

49. The agency did not provide a response to my Step Two, nor obtain an

extension of time, within the 40 days their grievance policy allows. That would have been September 26, 2017.

50. On October 11, 2017, after their time has expired, I received the Step Two appeal back, telling me I had attached a copy of the Step One to the appeal, instead of the original. I was given fifteen days to resubmit it if I still wanted to do so.

51. On October 12, 2017, I resubmitted Step Two No. 2017179298. Based on that second submittal date, the agency's response is currently due on November 21, 2017. The agency did NOT meet its deadline.

### C. Failure To Maintain Heat-Remedial Ice

52. I addressed the Michael Unit officials' refusal/failure to maintain the heat-remedial ice in the offender housing areas, as addressed in Paragraph 12 above, in Grievance No. 2017185893.

53. On September 20, 2017, Asst. Warden Meador responded to Grievance No. 2017185893 stating:

> "Ice is delivered to the offender housing areas multiple times each day in accordance with the established schedule. Coolers are refiled [sic] in as timely a manner as possible as needed. No Policy violation noted".

54. On September 28, 2017, I filed a Step Two appeal on No. 2017185893.

55. On November 2, 2017, the agency requested an additional forty (40) days in which to avoid having to provide a response to the Step Two appeal. Based upon that extension date, the agency's response is currently due on or before December 11, 2017.

### D. Retaliation

56. On September 1, 2017, I submitted a Step One Grievance addressing the retaliatory acts. The Michael Unit Grievance Office Supervisor, M. Price, Investigator III, assigned the grievance the number 2018000169 and refused to process it.

57. On September 19, 2017, I again submitted my grievance addressing the retaliatory acts. It was assigned #2018009321.

58. On October 20, 2017, Asst. Warden Meador responded to Grievance No. 2018009321 stating:

> "An investigation was conducted into your complaint regarding housing assignment. All offender[s] are subject to be moved when there is an overflow in their custody level. You are appropriately assigned".

59. On October 23, 2017, I filed a Step Two appeal of No. 2018009321. Based upon that date, the agency's response is currently due on December 2, 2017.

AFFIANT FURTHER SAYETH NOT.

I, Michael Bohannan, being presently imprisoned in Anderson County, Texas, and under penalty of perjury, do hereby affirm that the foregoing facts are based upon my personal knowledge and are true and correct.

Executed on this the _____ day of _____ , 2017.


_____
Affiant

<u>SWORN DECLARATION</u>

I, Michael Bohannan, being presently imprisoned in Anderson County, Texas, and under penalty of perjury, do hereby affirm, that the attached Inmate Request to Officials form ("I-60") is a true and correct copy of that which I mailed to Mr. Sandlin, TDCJ Michael Unit Classification Chief, and which contains the response I received back.

Executed on this the ___6th___ day of _December_____, 2017.

Affiant

TEXAS DEPARTMENT OF CRIMINAL JUSTICE — INSTITUTIONAL DIVISION

# INMATE REQUEST TO OFFICIAL

REASON FOR REQUEST: (Please check one)

PLEASE ABIDE BY THE FOLLOWING CHANNELS OF COMMUNICATION. THIS WILL SAVE TIME, GET YOUR REQUEST TO THE PROPER PERSON, AND GET AN ANSWER TO YOU MORE QUICKLY.

1. ☐ Unit Assignment, Transfer (Chairman of Classification, Administration Building)

2. ☐ Restoration of Lost overtime (Unit Warden-if approved, it will be forwarded to the State Disciplinary Committee)

3. ☐ Request for Promotion in Class or to Trusty Class (Unit Warden- if approved, will be forwarded to the Director of Classification)

4. ☐ Clemency-Pardon, parole, early out-mandatory supervision (Board of Pardons and Paroles, 8610 Shoal Creek Blvd. Austin, Texas 78757)

5. ☐ Visiting List (Asst. Director of classification, Administration Building)

6. ☐ Parole requirements and related information (Unit Parole Counselor)

7. ☐ Inmate Prison Record (Request for copy of record, information on parole eligibility, discharge date, detainers-Unit Administration)

8. ☐ Personal Interview with a representative of an outside agency (Treatment Division, Administration Building)

TO: Mr. Sandlin, Classification Chief            DATE: Aug. 18, 2017
                    (Name and title of official)

ADDRESS: Michael Classification Office

SUBJECT: State briefly the problem on which you desire assistance.

Mr. Sandlin,
    As I assured you, I did not "disrespect" one of the first shift staff member (nor any female staff member) and I have not gotten a disciplinary case sir. I got along well with the other offenders on "X" pod and stayed out of staffs faces. Please return me to "X" pod like you told me you'd do if you found out the above was correct.
    Sir, if you still have doubts/concerns please look up my old number 366986, You will find I was the first inmate on this unit. Warden Garner brought me from Coffield with him. I was the Major's Office/Courtroom clerk and trained the first five Freeworld courtroom clerks here, I then was Capt. Starky's kitchen clerk until we all went to opened Hughes in 1988. Please move me back sir.

Name: Michael Bohannon            No: 1841746            Unit: Michael

Living Quarters: 4-D-31-B            Work Assignment: F/s Med

DISPOSITION: (Inmate will not write in this space)

I finally remembered who it was, It was Sgt Saxon, He said he told you to pat your shirt on and you were disrespectful to him, I asked him to look at your picture to be sure it was you, I will see what he says later

MI-60 (Rev 11-90)

## SWORN DECLARATION

I, Michael Bohannan, being presently imprisoned in Anderson County, Texas, and under penalty of perjury, do hereby affirm that the attached four (4) Step One Grievances are copies of those I submitted to the TDCJ officials; containing the response (where present) those officials provided. I further affirm that the facts I have stated in each of these grievances is true and correct and within my personal knowledge.

Executed on this the _6th_ day of _December_, 2017.


_____
Affiant



B13

# Texas Department of Criminal Justice

## STEP 1

# OFFENDER GRIEVANCE FORM

OFFICE USE ONLY

Grievance #: _2017185992_

Date Received: _AUG 08 2017_

Date Due: _9-17-17_

Grievance Code: _506_

Investigator ID #: _I1983_

Extension Date: _____

Date Retd to Offender: _SEP 18 2017_

**Offender Name:** Michael Bohannan    **TDCJ #** 1841746

**Unit:** Michael    **Housing Assignment:** ~~19-X-19~~ 40-31B

**Unit where incident occurred:** Michael

---

You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing. notified bldg staff each day and
Who did you talk to (name, title)? sent I-60's to Unit Warden & Safety Officer        When? 7/23 & 7/31

What was their response? None

What action was taken? None

---

State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate

This grievance addresses the Michael Unit's refusal to provide adequate ice in the offender
housing areas as the agency's director ordered and as the agency is continually misrepresenting
to the federal courts that it is doing.

    19 Bldg X-Pod has had no ice on the following dates and times:

| | |
|---|---|
| 7/19 | 6:30pm to 10:15pm |
| 7/20 | 7:00pm to 9:15pm |
| 7/21 | 7:20pm to 11:00pm and when they brought ice at 11:00 they only filled one cooler |
| 7/23 | 3:30pm to 5:00pm |
| 7/25 | None after 9:30pm |
| 7/26 | none until 12:30pm and none from 3:30pm to 7:30pm |
| 7/27 | 8:15pm to 11:00pm |
| 7/29 | 5:30pm until some time around midnight |
| 7/30 | none from approx 7:00pm until approx. midnight |

    On each of these occasions we notified the supervising officers (they never check the
coolers for ice when they come through so we have to tell them and they claim they call the
kitchen and, sometimes, supervision. As the times show, that does not get anything timely
done about the problem. The security cameras will verify these times and, as a result, are
discoverable and should be preserved for pending/future litigation.
    I sent I-60's to Warden Meador and the unit's Safety Officer but neither felt the issue
was serious enough to warrant a response.

I-127 Front (Revised 11-2010)        YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM        (OVER)

Appendix F

_____

_____

_____

_____

_____

_____

_____

_____

**Action Requested to resolve your Complaint.**
Since the agency cannot rely upon its staff to implement the remedial measures its Director orders, that all offender
housing areas be maintained at a temperature level that does not exceed 88 degrees.

**Offender Signature:** _[Signature]_                    **Date:** August 2, 2017

**Grievance Response:**

Ice is delivered to the offender housing areas multiple times each day in accordance with the established schedule.
Coolers are refiled in as ttimely a manner as possible as needed.  No policy violation noted.

**Signature Authority:** _[Signature]_   WARDEN MEADOR         **Date:** 9/15/17

If you are dissatisfied with the Step 1 response, you may submit a Step 2 (I-128) to the Unit Grievance Investigator within 15 days from the date of the Step 1 response.
State the reason for appeal on the Step 2 Form.

**Returned because:**      *Resubmit this form when the corrections are made.

☐ 1. Grievable time period has expired.
☐ 2. Submission in excess of 1 every 7 days.  *
☐ 3. Originals not submitted.  *
☐ 4. Inappropriate/Excessive attachments.  *
☐ 5. No documented attempt at informal resolution.  *
☐ 6. No requested relief is stated.  *
☐ 7. Malicious use of vulgar, indecent, or physically threatening language.  *
☐ 8. The issue presented is not grievable.
☐ 9. Redundant, Refer to grievance #_____
☐ 10. Illegible/Incomprehensible.  *
☐ 11. Inappropriate.  *

**UGI Printed Name/Signature:** _____

**Application of the screening criteria for this grievance is not expected to adversely
Affect the offender's health.**

**Medical Signature Authority:** _____

## OFFICE USE ONLY

Initial Submission        UGI Initials:_____

Grievance #:_____

Screening Criteria Used: _____

Date Recd from Offender: _____

Date Returned to Offender: _____

**2nd Submission**           UGI Initials:_____

Grievance #:_____

Screening Criteria Used: _____

Date Recd from Offender: _____

Date Returned to Offender: _____

**3rd Submission**          UGI Initials:_____

Grievance #:_____

Screening Criteria Used: _____

Date Recd from Offender: _____

Date Returned to Offender: _____

I-127 Back (Revised 11-2010)

# Texas Department of Criminal Justice

# STEP 1

## OFFENDER GRIEVANCE FORM

THE STATE OF TEXAS

9/11

| OFFICE USE ONLY | |
|---|---|
| Grievance #: | 2018009321 |
| Date Received: | SEP 19 2017 |
| Date Due: | 10-29-17 |
| Grievance Code: | 200 |
| Investigator ID #: | |
| Extension Date: | |
| Date Retd to Offender: | OCT 20 2017 |

**Offender Name:** Michael Bohannan   **TDCJ #** 1841746

**Unit:** Michael   **Housing Assignment:** 4-D-31B

**Unit where incident occurred:** Michael

---

You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.

Who did you talk to (name, title)?   sent I-60 to Mr. Sandlin   8/18
spoke to Mr. Sandlin and to Asst. Warden Meador   When? 8/18 & 8/23

What was their response?   See below

What action was taken?   See below

---

State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate

This grievance addresses Mr. Sandlin's and Sgt. Saxon's retaliatory cell/bunk reassignment knowing that such reassignment jeopardizes my health and safety. That move occurred on August 18th.

On August 11, 2017, during the hottest part of the day, Sgt. Saxon and an unknown female employee entered X-Dorm with a cart full of urinalysis kits. They set up on a table under the televisions and called a number of cubicles to the dayroom to obtain specimen kits, my cubicle being one of them. When I came to the table I did not have a shirt on because of the excessive heat (it was so hot I was unable to go to the supper meal). I had been laying in front of my fan using a cool towel, trying to ameliorate the excessive heat and not succumb to heat exhaustion. The female officer refused to provide me a specimen cup without my going back to my cubicle and getting a shirt on. I went back to my cubicle and Sgt. Saxton came over and told me if I did not put a shirt on and go get the cup he would have me moved (I presumed to lockup somewhere). I tried to explain to him that I was already having problems with the heat and adding clothing would only increase my body temperature. He told me he was sweating (he was profusely) and that if he was hot so could I. I then put on my shirt, obtained the specimen cup, and then went to the restroom area and urinated in the cup. (NOTE: This was the first time I have ever taken a urinalysis where the persons giving it sat at a table out of sight while I pissed – this was the procedure that Sgt. Saxon used – check the video tapes). I was clean.

On August 18, 2017, at 10:15:05 hours, a retaliatory cell change slip was printed out for me moving from 19 Bldg. X-Dorm, to 4 Bldg D-Pod Cell 31. I went and asked Mr. Sandlin what I had done to get moved. He told me that someone had came and told him that myself and some other offender had disrespected a first-shift female officer and had gotten a disciplinary case for him. I explained to him that I had not gotten any kind of disciplinary case nor "disrespected" any first shift female officer. Mr. Sandlin told me he was a man of his word, that he would look into it, and if I had not gotten such a case would move me back – that maybe he had gotten the wrong guy. I followed up the meeting with an I-60 that evening.

On August 23rd, I spoke to Asst. Warden Meador in front of #3 chow hall about what had occurred. Warden Meador assured me that offenders on the Michael Unit are not moved for complaining about problems and that if Mr. Sandlin told me he would move me back if I was not the one who had gotten the case for disrespecting the female officer, then he would, that his staff were not going to be lying to offenders. Warden Meador assured me he would look into it.

On August 29th, I received my I-60 to Mr. Sandlin back stating:
"I finally remembered who it was. It was Sgt. Saxton. He said he told you to put your shirt on and you were disrespectful to him." I asked him to look at your picture to be sure it was you. I will see what he says."
The disciplinary rules make it clear that if an offender violates a rule of the TDCJ there is a process that is to be followed before he is punished, and those rules specify what types of punishment are available – cell moves are not one of them. Here, Sgt. Saxton did not cite me for any type of disciplinary violation because I did not commit any such violation. He was hot and apparently having a bad day and because I complained about the heat problem he told Mr. Sandlin that he felt I was being "disrespectful" (but not enough so to warrant a case) and Mr. Sandlin moved me a week later.

---

I-127 Front (Revised 11-2010)   YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM   (OVER)

9/11/17

Appendix F



814

received back on 8/14 resubmitted on 8/22
received back on 8/29 resubmitted on 9/7
received back on 9/7 resubmitted on 9/8

# THE STATE OF TEXAS

## Texas Department of Criminal Justice

# STEP 1

## OFFENDER GRIEVANCE FORM

**OFFICE USE ONLY**

Grievance #: _____

Date Received: _____

Date Due: _____

Grievance Code: _____

Investigator ID #: _____

Extension Date: _____

Date Retd to Offender: _____

**Offender Name:** Michael Bohannan    **TDCJ #** 1841746

**Unit:** Michael    **Housing Assignment:** ~~19-X-19~~ ✓

**Unit where incident occurred:** Michael   4-D-313

---

You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.   Sent I-60 to Pam Pace   07/26

Who did you talk to (name, title)? spoke to security officer on duty    When? 07/26

What was their response? See Below    AUG 08 2017   AUG 24 2017   SEP 07 2017

What action was taken? See Below

---

**State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate**

This grievance addresses Pam Pace's (Michael Unit Practice Manager) malicious indifference to the health and safety of offenders seeking healthcare provision on the Michael Unit, by subjecting them to cruel and unusual treatment. Her malicious indifference resulted in a denial of healthcare as well.

On July 21, 2017, the Michael Unit maintenance crew was attempting to modify the air conditioner on 10 Bldg (the system that cools the medical waiting area, law library, education, & library) and broke it.

On July 25, 2017, I had an appointment to see a telemed provider, from 11:30am to noon. I arrived at the infirmary at 11:15am and told the security officer I had another layin at 12:30pm. The waiting area was extremely hot, with a heat index range of between 110 and 120 degrees. I was seen by Mrs. Black to get my vitals and I told her I had a 12:30pm layin. I informed the security officer that I had a heat restriction and she told me she had been trying to get fans but I would just have to endure it like everyone else. She verified that Mrs. Pace was aware of the situation when I asked her. I eventually became sick at my stomach and developed a headache. Finally, at approx. 12:15pm, we all revolted and went outside and stood in front of 10 Bldg. where we could atleast get a little breeze. The security officer confirmed that Mrs. Pace and her staff had scheduled three different telemed provider's caseloads at the same time, knowing they only had one telemed system, that they had no ventilation available whatsoever, in the hot mid-day temperatures. At 12:30 I went to my other layin without having been seen and feeling very sickly/weak.

On July 27, 2017, I saw where a fan had finally been installed in the infirmary waiting cage to help with the dangerously hot conditions.

Mrs. Pace knew, on July 21st, that offenders were being exposed to dangerous heat conditions in her waiting area. She did absolutely nothing to correct the problem. She could have set up chairs in the area in front of dental (where all the other Michael-type units have their medical waiting areas), she could have scheduled patients during the cooler times of the day and night, she could have insured that only the offenders actually ready to be seen were called to the clinic at the time they could be seen (she has no trouble doing that for 12-Bldg offenders), and most of all she could have gotten with unit administration, regional administration, or HV administration to get some sort of fans installed immediately upon the breaking of the A/C. She sat in her airconditioned office for six very hot days before a single fan was finally installed.

Mrs. Pace subjected me to cruel and unusual treatment by scheduling me for a time in which I would not be seen and during which I would be forced to sit in a cage she was aware was dangerously hot. I should not have been subjected to such life-threatening conditions to try to obtain needed healthcare — health care I have still yet to be provided.

Even Texas' animal shelters are required by law to have better conditions for those they cage. Mrs. Pace's office air conditioner worked just fine, so why should she care about her patients??? |

That is malicious indifference. AUG 08 2017   AUG 24 2017   SEP 07 2017

---

I-127 Front (Revised 11-2010)    **YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM**    (OVER)

Appendix F

Case 4:14-cv-03253 Document 360-17 Filed on 06/23/17 in TXSD Page 23 of 26



# STEP 1

**Texas Department of Criminal Justice**

## OFFENDER GRIEVANCE FORM

OFFICE USE ONLY

Grievance #: _2017179298_

Date Received: _JUL 27 2017_

Date Due: _9-5-2017_

Grievance Code: _522_

Investigator ID #: _I 2316_

Extension Date: _____

Date Retd to Offender: _AUG 11 2017_

Offender Name: __Michael Bohannan__    TDCJ # __1841746__

Unit: __Michael__    Housing Assignment: __19-X-19__

Unit where incident occurred: __Michael__

---

You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing. reported deficiencies to floor officers and
Who did you talk to (name, title)? __Sent I-60's to Warden, Asst. Warden, Safety Officer__    When? __7/12 thru present__

What was their response? __None__

What action was taken? __None__

---

State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate

This grievance addresses the Michael Unit administration's and security staff's failure to implement reasonable remedial measures to ameliorate the dangerous and excessive heat present in the Michael Unit living quarters and activity areas. Examples of this indifference are noted below.

The Michael Unit maintenance officials had their workers remove the ventilation ribbons/streamers that the agency's director ordered be installed on all vents. The unit administration and security staff have approved that removal having not ordered that removal be corrected for over a year.

Despite the Director's order that all ventilation systems be checked and repaired in the spring to prepare for the hot summer, the Michael Unit maintenance department did not do so, instead falsifying work orders by indicating no problem found. The unit administration and security staff have approved their not making repairs by having the required ribbons and by not making walk-through inspections to check on the ventilation systems.

The A-Side intake vent on X-Pod is not working properly as it barely blows and lets in insects by the thousands. The exhaust vents on the back side of X-Pod (about 25 feet above the sinks) are not working whatsoever. The ones over the areas where many of the maintenance workers bunk are working. The ventilation system for sucking out the heat and humidity of the A-Side showers in X-Pod also is not working whatsoever. This lets that heat and humidity pour into the already extremely hot housing area. These ventilation problems have been reported for months and months without correction. Apparently the maintenance officials falsify the paperwork claiming no problem found. They do that because the repair work is not in a convenient place, is difficult to repair, is in a very hot area, and because they want to save money to use for things like paint and repairs to the administration's airconditioning systems.

The unit administration and security staff fail to insure that ice is available to the offender population in the hottest times of the day. Neither the administrative staff or the security staff make any sort of regular checks on the amount of ice available in the offender housing areas. The ice provision is not supervised and when it gets hot outside that provision slows down or stops entirely. The offenders must notify staff when the ice is depleted and then it takes hours to get refills. The unit provides one ten-gallon cooler of ice for 60-plus offenders.

The unit administration and food service staff do not provide iced beverages in their offender dining rooms (the officers dining room is air conditioned and they provide ice for them) but serve only warm/tepid beverages. Often they do not even provide cups for the offenders to use.

The unit administration and security staff close the dining hall exit doors. This stops much ventilation and forces offenders to pack up like sardines, behind the closed door, in the dangerously hot dining room, 30 to 60 or more at a time. The official operating those doors is unable to clearly see those offenders that he/she is piling up. This is occurring when the sidewalk has clearly designated signage for the proper staging of offenders in clear sight of that official, and where there is at least some outside ventilation. Therefore, their staging and close-door process is a security risk intended to make the offenders be subject to the excessive heat and to deter them from eating.

The unit administration and security staff often cancel the lunch-time hot meal (providing a nutritionally inadequate sack meal) yet feed the supper meal as a hot meal. They do so because it is cooler at the lunch meal and more offenders will eat it. But the supper meal is so much more oppressively hotter so less will turn out to eat it.

In the cell housing areas, the unit administration and security staff often place the offender population on a lock-down status (usually because they are short of staff or some other reason) confining them in their cells and cancelling dayroom. This prevents those offenders from having direct access to the iced water and cold showers the agency claims it is providing instead of air conditioning because their access is only available to those in the dayrooms.

The unit administration and security staff call out 200 to 400 offenders at a time for chow and then stage them in the hot sun (instead of staging them in the covered walkways) while they await room in the chow halls. They do so instead of sending them 25-30 at a time as room becomes available. Because having 200-400 offenders staged at one time is a gross security risk, they must be doing so to subject the offenders to the hot sun to discourage them from eating.

The unit administration and maintenance officials have the circulating fans located on the upper levels of X-Pod (which are pointed to where the maintenance offender workers are housed) on emergency power. But the rest of the fans, including those on one row where the medically infirm and heat-restricted offenders are housed, are NOT on emergency

---

I-127 Front (Revised 11-2010)    YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM    (OVER)

Appendix F

Michael Bohannan   #1841746

2664 FM 2054

Tennessee Colony, Texas   75886

December 6, 2017

United States Courts
Southern District of Texas
FILED

DEC 11 2017

David J. Bradley, Clerk of Court

Clerk of the Court

U.S. Dist. Court — Southern Dist. of Texas

515 Rusk Street, Room 5401

Houston, Texas   77002

Re: <u>Togonidze v. Livingston, et al</u>
   No. 4:14-cv-03324

Dear Clerk:

   Please find enclosed my motion to intervene with attachments. Please file it amongst the papers in the cause and bring it to the attention of Judge Ellison.

   I am providing an additional copy of this cover letter for file stamping to verify receipt and presentation.   Please return it to me in the postpaid envelope enclosed.

   Thank you for your time and help.

                                  Sincerely,

                                  Michael W. Bohannan

cc: Jeffrey Edwards
    Cynthia Burton
    Lacey Mase
    file

LEGAL
MAIL

United States Courts
Southern District of Texas
FILED
DEC 11 2017
David J. Bradley, Clerk of Court

Clerk of the Court
U.S. Dist. Court: Southern Dist. of Texas
515 Rusk Street, Room 5401
Houston, Texas

77002

LEGAL
MAIL